UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WENDY LEA GRANT, | ) |
|        Plaintiff, | ) No. CV-08-00398-JPH |
| | ) |
| v. | ) ORDER GRANTING DEFENDANT'S |
| | ) MOTION FOR SUMMARY JUDGMENT |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
|        Defendant. | ) |
| | ) |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on September 25, 2009.  (Ct. Rec. 17, 19-4).  Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Terrye Shea  represents the Commissioner of Social Security ("Commissioner").  The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.) On August 27, 2009, plaintiff filed a reply. (Ct. Rec. 21.)  After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 19-4) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 17.)

**JURISDICTION**

Plaintiff filed applications for disability insurance benefits (DIB) on May 29, 2003 and SSI on August 12, 2003, both alleging onset as of July 1, 2002.  (SSI, Tr. 572-574; DIB

application not in file.)  The applications were denied initially and on reconsideration. (Tr. 68-71,77-80.)

Two hearings have been held in this case, both before the same Administrative Law Judge (ALJ), Paul Gaughen.  At the first hearing on March 13, 2007, plaintiff, represented by counsel, and vocational expert K. Diane Kramer testified. (Tr. 625-660.) After this hearing the ALJ referred plaintiff for consultative psychological and physical evaluation. (Tr. 39.)  At a supplemental hearing held November 1, 2007, plaintiff, psychological expert R. Thomas McKnight, Jr., Ph.D., and vocational expert Daniel R. McKinney testified. (Tr. 598-622.)  On February 8, 2008, the ALJ found that plaintiff is not disabled. (Tr. 17-55.)  The Appeals Council received additional evidence and denied plaintiff's request for review on November 5, 2008.  (Tr. 6-9.)  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on December 24, 2008. (Ct. Rec. 2, 4.)

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcripts, the ALJ's decision, the briefs of both plaintiff and the Commissioner, and are briefly summarized here.

Plaintiff was 39 years old at onset and 43 at the first hearing.  (Tr. 129, 627.)  She has a tenth grade education, attended Fullerton Community College in California and came close to earning her associate's degree.  In 2007, plaintiff said she

completed about three and a half years of college. (Tr. 168, 244, 592, 628.)  She has past relevant work as a waitress, caterer's helper, and photographer. (Tr. 629-631.)  Plaintiff alleged disability onset as of July 1, 2002, due to neck, collar bone, back and knee problems, headaches, right shoulder pain, carpal tunnel syndrome (CTS) in both arms, pain and numbness in both arms and hands, ADHD, anxiety, and bipolar disorder.  (Tr. 70, 73, 151, 164 and 631-641.)

<b>SEQUENTIAL EVALUATION PROCESS</b>

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                    - 3 -

is engaged in substantial gainful activities.  If so, benefits are
denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If
not, the decision maker proceeds to step two, which determines
whether plaintiff has a medically severe impairment or combination
of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii),
416.920(a)(4)(ii).

     If plaintiff does not have a severe impairment or combination
of impairments, the disability claim is denied.  If the impairment
is severe, the evaluation proceeds to the third step, which
compares plaintiff's impairment with a number of listed
impairments acknowledged by the Commissioner to be so severe as to
preclude substantial gainful activity.  20 C.F.R. §§
404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P
App. 1.  If the impairment meets or equals one of the listed
impairments, plaintiff is conclusively presumed to be disabled.
If the impairment is not one conclusively presumed to be
disabling, the evaluation proceeds to the fourth step, which
determines whether the impairment prevents plaintiff from
performing work which was performed in the past.  If a plaintiff
is able to perform previous work, that Plaintiff is deemed not
disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).
At this step, plaintiff's residual functional capacity ("RFC")
assessment is considered.  If plaintiff cannot perform this work,
the fifth and final step in the process determines whether
plaintiff is able to perform other work in the national economy in
view of plaintiff's residual functional capacity, age, education
and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

1   416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

2       The initial burden of proof rests upon plaintiff to establish

3   a *prima facie* case of entitlement to disability benefits.

4   *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.*

5   *Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is

6   met once plaintiff establishes that a physical or mental

7   impairment prevents the performance of previous work.  The burden

8   then shifts, at step five, to the Commissioner to show that (1)

9   plaintiff can perform other substantial gainful activity and (2) a

10  "significant number of jobs exist in the national economy" which

11  plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th

12  Cir. 1984).

13                    **STANDARD OF REVIEW**

14      Congress has provided a limited scope of judicial review of a

15  Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold

16  the Commissioner's decision, made through an ALJ, when the

17  determination is not based on legal error and is supported by

18  substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995

19  (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.

20  1999).  "The [Commissioner's] determination that a plaintiff is

21  not disabled will be upheld if the findings of fact are supported

22  by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572

23  (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence

24  is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d

25  1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.

26  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);

27  *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d

28

573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

   It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

   At the outset, the ALJ found plaintiff met the DIB

requirements through December 31, 2007. (Tr. 17, 19.) The ALJ
found at step one that plaintiff has not worked at substantial
gainful activity levels since onset. (Tr. 19.)  At steps two and
three, the ALJ found that plaintiff suffers from degenerative
arthritis of the cervical spine status post anterior cervical
discectomy at C3-C4 with interbody fusion (in October 2004),
degenerative arthritis of the right acromioclavicular joint status
post arthroscopy of the right shoulder with open rotator cuff
repair and excision of the right distal clavicle (in January
2006), and a history of drug and alcohol abuse (DAA), impairments
that are severe but which do not alone or combination meet or
medically equal a Listing impairment.  (Tr. 19-20.)

The ALJ found attention deficit hyperactivity disorder
(ADHD), attention deficit disorder (ADD), bipolar disorder, post-
traumatic stress disorder (PTSD), depression, anxiety, panic
attacks, CTS, migraine headaches, asthma, history of healed
fracture of the right distal fibula, left bunion and/or history of
right bunionectomy are not severe impairments. (Tr. 19-20.) The
ALJ found plaintiff's history of DAA was not material to
determining disability because plaintiff testified "she is not
using such substances" and the record indicates she remained
capable of performing past relevant work "during the period(s)
when such substance abuse reportedly did occur." (Tr. 20.)
Plaintiff does not challenge this finding[1].  The ALJ found

---

[1]It appears from the record plaintiff has not abused
substances since sometime after January 19, 2006, when she
tested positive for THC and opiates.  Plaintiff has reported
several times she stopped DAA in 2006.  There is no evidence

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 7 -

plaintiff less than completely credible. (Tr. 44-45.)  At step
four, relying on the VE, the ALJ found plaintiff's RFC for a
significant range of light to medium work enables her to perform
her past relevant work as a waitress, caterer's helper, and
photographer. (Tr. 54.)  Because the ALJ found plaintiff not
disabled at step four, step five was unnecessary.   Accordingly,
the ALJ found that plaintiff is not disabled as defined by the
Social Security Act. (Tr. 54.)

**ISSUES**

Plaintiff contends the Commissioner erred as a matter of law
by failing to properly weigh the evidence of psychological and
physical impairment. Specifically, she asserts the ALJ failed to
properly reject the opinions of several examining psychologists as
well as the 2005 opinion of treating physician David H. Bare,
M.D., and his PAC, Rogelio Cantu. (Ct. Rec. 18 at 13-18; 18-19.)
The Commissioner responds the ALJ appropriately weighed the
evidence.  He asks the Court to affirm the ALJ's decision.  (Ct.
Rec. 19-3 at 7,9, 23-24.)

**DISCUSSION**

**A. Weighing impairment evidence**

In social security proceedings, the claimant must prove the
existence of a physical or mental impairment by providing medical
evidence consisting of signs, symptoms, and laboratory findings;
the claimant's own statement of symptoms alone will not suffice.

---

of use after January 19, 2006. (Tr. 417, 505, 509.) On May 25,
2006, plaintiff said the use of drugs or alcohol had not negatively
affected her employment. (Tr. 409.)

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                        - 8 -

20 C.F.R. § 416.908.  The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.  Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms.  *Bunnell v. Sullivan*, 947, F. 2d 341, 345 (9th Cr. 1991).

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's physical condition.  *Fair v. Bowen*, 885 F. 2d 597, 604-05 (9th Cir. 1989).  However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).  More weight is given to a treating physician than an examining physician.  *Lester v. Cater*, 81 F.3d 821, 830 (9th Cir. 1996).  Correspondingly, more weight is given to the opinions of treating and examining physicians than to nonexamining physicians.  *Benecke v. Barnhart*, 379 F. 3d 587, 592 (9th Cir. 2004).  If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons.  *Lester*, 81 F. 3d at 830. If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence.  *See Flaten v. Secretary of Health and Human Serv.*, 44 F. 3d 1435, 1463 (9th Cir. 1995).

In addition to the testimony of a nonexamining medical advisor, the ALJ must have other evidence to support a decision to

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                    - 9 -

reject the opinion of a treating physician, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1042-43 (9th Cir. 1995).

**B.  Mental impairment - opinions of examining psychologists**

Plaintiff contends that the ALJ failed to properly reject some of the opinions of examining psychologists Paul Wert, Ph.D., John Arnold, Ph.D., Dennis Pollack, Ph.D., and John Severinghaus, Ph.D.  She alleges the Court should consider the post hearing opinion of examining psychologist Frank Rosenkrans, Ph.D.  (Ct. Rec. 18 at 14-18.)  The Commissioner responds that the ALJ appropriately weighed all of the opinions, and Dr. Rosenkrans's opinion is not reasonably likely to change the result. ( Ct. Rec. 19-3 at 9-19.)

In October of 2004 (about two years after onset), Dr. Wert examined plaintiff, apparently for the purpose of determining appropriate placement for her preteen son. (Tr. 29, referring to Tr. 242-248.)  The ALJ gave little weight to some of Dr. Wert's contradicted opinions because they appear inconsistent with plaintiff's signs on his [Dr. Wert's] own mental status examination, which showed she was "mildly depressed with logical, goal-directed thoughts and no signs of a thought disorder." (Tr. 29, 50, referring to Tr. 247.)  The ALJ observes Dr. Wert went on

to diagnose, apparently primarily based on two test results[2],
bipolar disorder with hypomanic or manic episodes, without
psychotic features; alcohol dependence by history; psychoactive
substance abuse NOS; antisocial personality disorder, and paranoid
personality disorder with passive-aggressive and self-defeating
traits.  (Tr. 29,50, referring to Tr. 247.) The ALJ indicates Dr.
Wert further opined plaintiff's psychological, emotional and
probable chemical dependence problems would likely put any child
in her care at risk for neglect and possible abuse. (Id.)

The second reason the ALJ rejects Dr. Wert's opinion is that
it is "clearly inconsistent with other substantial medical
evidence of record." (Tr. 50.)  The ALJ points out plaintiff has
not been treated by any psychiatrist, psychologist or other mental
health care professional at any time since onset[3] [other than for
substance abuse], indicating she did not suffer from the severe
conditions diagnosed by Dr. Wert. (Tr. 45,50; see e.g., Tr. 520:

---

[2]the Minnesota Mutliphasic Personality Inventory-2
(MMPI-2) and the Millon Clinical Multiaxial Inventory-III
(MCMI-III)(Tr. 242). Dr. McKnight testified Dr. Wert's report
contains nothing about plaintiff's responses to the MMPI-2, nor
any interpretation. (Tr. 601.) He also notes the MCMI-III is a
copy of a computer-generated report. (Tr. 601-602.) The MCMI-III
states the information is "computer-assisted." (Tr. 245.)

[3]
On April 8, 2003, plaintiff indicated she had post-partum
depression in 2000 (Tr. 256), well before onset.  After
plaintiff asked Mr. Cantu for a counseling referral on June 3,
2003, for family issues and possible depression (Tr. 306), he
referred her to Bill Martin (Tr. 307) but plaintiff never made
an appointment. On May 25, 2006, plaintiff indicated she saw a
therapist in California "off and on" for 13 years for "self-
esteem." (Tr. 409.) There are no records from California in the
file.

plaintiff stated in 2007 she had no history of mental treatment other than for substance abuse.)  The lack of mental health treatment is especially striking since, as the ALJ points out, plaintiff has not been shy about seeking medical attention. He notes plaintiff "has made quite numerous requests for other health care providers in a variety of settings to provide narcotic analgesics despite benign physical and mental status signs on physical examination." (Tr. 45.) The ALJ is correct both that the complete lack of treatment for mental health issues is inconsistent with Dr. Wert's opinion, and that Dr. Wert's opinion is internally inconsistent.

To further aid in weighing the conflicting psychological evidence, the ALJ evaluated plaintiff's credibility and, as noted, found her less than fully credible. (Tr. 44-45.) Plaintiff does not challenge this finding on appeal. Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F. 3d 683, 688 (9th Cir. 2005).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F. 3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F. 2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F. 3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                          - 12 -

reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F. 3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F. 3d at 834; *Dodrill v. Shalala*, 12 F. 3d 915, 918 (9th Cir. 1993).

As the Commissioner correctly observes, plaintiff did not dispute the ALJ's finding that the complete lack of treatment also impugns her credibility with respect to mental health conditions. (Ct. Rec. 19-3 at 11.)

The ALJ relied on several factors when he assessed credibility. Perhaps most significantly,

> No treating or examining physician has opined, or
> documented objective findings that would support
> a finding, that the claimant has impairment(s) that
> render her unable to perform all substantial
> gainful activity throughout any period of at least
> 12 consecutive months since her alleged disability
> onset date.

(Tr. 45.)

The ALJ also relied on the significant discrepancies in plaintiff's statements and on the "substantial discrepancies between the claimant's statements and the documented signs, findings and treatment of record." (Tr. 44-45.)

There are several significant discrepancies in plaintiff's statements. Plaintiff told ER staff on April 23, 2003 her only prescribed medication was adderall, even though treatment provider Mr. Cantu, PAC, prescribed lortab on March 18, 2003, and flexeril and lortab on April 14, 2003. (Tr. 22-23, comparing Exhibit 3F/5-6 with Exhibits 8F at 7-8, 11-12.) The ALJ observes plaintiff was again dishonest with ER staff about her prescriptions on July 13,

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 13 -

2003; August 13, 2003; November 12, 2003; December 15, 2003; May 7, 2004; and June 30, 2004 (Tr. 24-27,47), a period of more than a year.

The ALJ found several substantial discrepancies between plaintiff's statements and the documented signs, findings and treatment in the record. (**1**)  In January, July, and August of 2003, plaintiff went to the ER for reported pain in her #8 tooth. On each visit was noted to be in no distress.  Her teeth were in good repair with no obvious caries, gum inflammation, or looseness.  She was prescribed lortab for dental pain. (Tr. 45.) As the ALJ points out, despite plaintiff's alleged pain, there is no record of a dental examination or treatment before or after the ER dates. (Id.) (**2**)  Although plaintiff alleges disabling impairments, treating physician Dr. Bare and PAC Mr. Cantu opined on April 7, 2003, and April 4, 2005, plaintiff could perform sedentary work. (Tr. 22-23, 31, referring to Tr. 382-387.) (**3**)  In contrast to allegations of severe impairment, after plaintiff's recovery from cervical surgery in October of 2004, treating neurosurgeon Dr. Hahn released plaintiff for sedentary work on January 18, 2005.  Dr Hahn opined plaintiff would be able to perform her past relevant work as a server and other "light to moderate" work in a month. (Tr. 47, referring to Exhibit 7F at 18.)  (**4**) Despite claims of severe mental impairments, as noted, plaintiff admits she has had no treatment for such allegedly disabling disorders.

Several of plaintiffs activities are noted by the ALJ, and, while he does not specifically rely on them when assessing credibility, they are inconsistent with plaintiff's claimed

impairments. Plaintiff wrestled with her niece (Tr. 24, referring to Tr. 208, 7/13/03); tried to climb a fire escape (Tr. 25, referring to Tr. 210, 11/12/03); drove "despite her repeated reports of record that she does not drive" (Tr. 25, referring to Tr. 212, 11/22/03); rode her bike (Tr. 26, referring to Tr. 216, 12/15/03); jumped into a lake and fell on a rock (Tr. 27, referring to Tr. 229, 6/30/04); slipped on rocks by the river (Tr. 27, referring to Tr. 332, 7/7/04), and played volleyball (Tr. 32, referring to Tr. 426, 9/8/05). Plaintiff's activities throughout the relevant period further undermine her claims.

The ALJ's unchallenged credibility finding is supported by clear and convincing reasons, and fully supported by the record. See *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002)(proper factors include inconsistencies in plaintiff's statements, inconsistencies between statements and conduct, and extent of daily activities).  Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment also cast doubt on a claimant's subjective complaints.  20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

When he weighed the evidence of psychological impairment, the ALJ considered the May 22, 2007 opinion of consultative examining psychologist, Dr. Severinghaus, and of the testifying psychological expert, Dr. McKnight. (Tr. 41-42,44, 52-53.) With respect to Dr. Severinghaus's opinion, the ALJ states:

> On mental status examination, Ms. Grant was observed
> to be clean with adequate grooming, well oriented,
> cooperative, and comfortable; she chuckled at times,
> made good eye contact, did not appear depressed, sat
> quietly without hyperactivity or fidgeting, and had

normal rate and flow of speech with normal articulation;

she exhibited no unusual behaviors and no pain
behaviors; and she demonstrated no behavioral evidence
of ADHD, hypomania, depression or anxiety.

On psychological tests, [plaintiff's] responses
indicated intellectual functioning in the high
borderline to low average range. Dr. Severinghaus
noted that neither Ms. Grant's 2004 psychological
evaluation for custody investigation [by Dr. Wert],
her 2006 psychological evaluation for public assistance
[by Dr. Arnold], nor her 2007 psychological evaluation
on referral from her attorney [by Dr. Pollack]
documented 'in mental status observations or general
or personal history, the kinds of behaviors and symptoms
consistent with either ADHD or bipolar spectrum disorders.'

(Tr. 42, referring to Exhibit 22F.)

The ALJ observes Dr. Severinghaus diagnosed alcohol abuse and

possible dependence in early sustained remission, cannabis abuse

in early sustained remission, past/remote use of hallucinogenics,

rule out bipolar II with hypomania, probable strong somatoform

tendencies, personality disorder NOS with borderline features, low

average to high borderline intelligence, history of ADHD (NOS)

that is not well substantiated in recent records and is possibly

controlled with medications, and a GAF of 55[4]. (Tr. 42.) Dr.

Severinghaus opined plaintiff's prognosis is guarded "due to her

likely character disorder" which would take a significant amount

of time to resolve in therapy; she does not presently require

either psychiatric consultation or ongoing personal counseling

---

[4]
A Global Assessment of Functioning (GAF) of 55 indicates
moderate symptoms (e.g., flat affect and circumstantial
speech, occasional panic attacks) or moderate difficulty in
social, occupational or school functioning (e.g., few friends,
conflicts with peers or coworkers). STATISTICAL AND DIAGNOSTIC
MANUAL OF MENTAL DISORDERS, Fourth Edition (DSM-IV), at p. 32.

(but might benefit from the latter); has no significant deficits in memory functioning or problem-solving beyond those imposed by her intellectual functioning; pace and persistence are "reduced somewhat by her various concerns" but she remains capable of functioning overall on a daily basis; interpersonal functioning is reduced mildly-to-moderately by depression and anxiety, and she appears capable of functioning in low stress situations. (Tr. 42, referring to Exhibit 22F.)

The ALJ considered psychologist Dr. McKnight's testimony that the record contains no clinical evidence to substantiate a diagnosis of ADHD, bipolar disorder, or personality disorder. (Tr. 44.) The ALJ observes:

> It is his [Dr. McKnight's] opinion, based on the medical evidence of record, that claimant does not have bipolar disorder. If the claimant had ADHD or a personality disorder, such impairments would have been present during the periods when she was employed; however, the record does not document that the claimant was ever unable to work as a result of ADHD and/or personality disorder and does not indicate that ADHD and/or personality disorder were contributing factors to her becoming unemployed[5]. While it is not possible to rule out somatoform disorder, the evidence of record does not appear to be consistent with a diagnosis of somatoform disorder.

(Tr. 44.)

Dr. Severinghaus similarly opines plaintiff has a reasonable

---

[5] Plaintiff has given several reasons for becoming unemployed. None involve mental impairments: plaintiff left her most recent job as a caterer because she moved to another city and had neck problems (2/6/07 and 3/7/07 at Tr. 417); she stopped working in July of 2002 because she was "having a lot of neck problems at the time" (3/31/07 at Tr. 631); and she quit a catering job of 3 years duration in 2002 due "neck problems and had neck surgery" (5/17/07 at Tr. 520).

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                    - 17 -

work record, despite her various psychological issues. (Tr. 522.)
Dr. McKnight testified most mental impairments manifest at least
by the age of majority, meaning plaintiff apparently worked for
many years (she told Dr. Weir she worked as a photographer for
eight years, and then for seventeen years in the catering
business)( Tr. 509) despite allegedly disabling mental
impairments.  The record clearly supports Drs. McKnight and
Severinghaus's opinions.

    In addition to rejecting Dr. Wert's opinion, the ALJ rejected
the contradicted opinions of examining psychologists Drs. Arnold
and Pollack for the same reasons: their assessments are
inconsistent with plaintiff's signs on mental status examination,
and they are "clearly inconsistent with other substantial medical
evidence," e.g., no record of any mental health treatment. (Tr.
51-52.)  The ALJ's reasons for rejecting the contradicted opinions
of some examining psychologists are supported by the opinions of
examining psychologist Dr. Severinghaus (partially adopted by the
ALJ), the ALJ's assessment of plaintiff's credibility, the
complete lack of mental health treatment after onset, and the
opinion of the testifying expert, Dr. McKnight.

    The ALJ is responsible for reviewing the evidence and
resolving conflicts or ambiguities in testimony.  *Magallanes v.
Bowen*, 881 F. 2d 747, 751 (9th Cir. 1989).  It is the role of the
trier of fact, not this court, to resolve conflicts in evidence.
*Richardson*, 402 U.S. at 400.  The court has a limited role in
determining whether the ALJ's decision is supported by substantial
evidence and may not substitute its own judgment for that of the
ALJ, even if it might justifiably have reached a different result

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                          - 18 -

upon de novo review.   42 U.S.C. § 405 (g).

The ALJ's rejection of the contradicted opinions of Drs. Wert, Arnold and Pollack is based on specific, legitimate reasons and supported by substantial evidence.

Plaintiff argues the ALJ erred by failing to properly weigh the opinion of examining psychologist Dr. Severinghaus and asks the Court to consider the post-hearing opinion of Dr. Rosenkrans.

The ALJ adopted much of Dr. Severinghaus's opinion. Plaintiff's assessed RFC includes a slight limitation in the ability to concentrate and a slight limitation in the ability to adapt to changes in the workplace; she is able to handle normal workplace stressors and requires an alcohol-free work environment. (Tr. 54.)  The ALJ notes Dr. Severinghaus opined plaintiff has no significant deficits in memory functioning or problem solving beyond those imposed by her level of intellectual functioning.  He opined her persistence and pace are "reduced somewhat by her various concerns" but "she remains capable of functioning overall on a daily basis." (Tr. 53, referring to Tr. 523.)

The ALJ rejected the assessed limitation on persistence and pace because, as Dr. McKnight testified, plaintiff worked for many years [25] without being affected by mental disorders or resulting impairment and Dr. Severinghaus made a similar observation. (Tr. 522.)  Dr. McKnight testified plaintiff's persistence and pace may be somewhat slowed now by the amount of pain medications taken, but he acknowledged such an opinion is outside his as well as Dr. Severinghaus's scope of expertise. (Tr. 606.)  Dr. McKnight opined psychological issues do not contribute to plaintiff's alleged inability to work because her work record shows she has

the ability to handle normal work stress, it appears with or without DAA. (Tr. 604-608.)

Dr. Severinghaus assessed a mild to moderate reduction in interpersonal functioning due to depression and anxiety (Tr. 523). Because the ALJ found plaintiff does not suffer the severe mental impairments of depression and anxiety, he was not required to adopt this limitation. (Tr. 19, 45.)

After the ALJ's adverse decision, plaintiff underwent an evaluation by Dr. Rosenkrans on July 10, 2008. (Tr. 588-595.)  The Court agrees with the Commissioner that, considering the record as a whole, Dr. Rosenkans's opinion does not create a reasonable possibility of changing the ALJ's decision. (Ct. Rec. 19-3 at 20.) The evidence as a whole indicates plaintiff suffers at most minimal limitations.

The ALJ provided clear and convincing reasons supported by the record for finding plaintiff's allegations not fully credible. He weighed the evidence and failed to adopt some of the contradicted opinions of some of the examining psychologists.  He relied on the opinions of other treating, examining, and testifying professionals, and on his assessment of plaintiff's credibility.  The ALJ gave specific and legitimate reasons, supported by substantial evidence, for rejecting some of the contradicted opinions.

Accordingly, the ALJ's determination that plaintiff's alleged mental impairments of ADD, ADHD[6], bipolar disorder, type II

---

[6]

With respect to ADD or ADHD, plaintiff's diagnosis of ADHD is by self-report. (Tr. 603.) Drs. Severinghaus and McKnight agree that even if plaintiff has ADD, it is addressed reasonably well

bipolar disorder, PTSD, depression, anxiety, and panic attacks are non-severe (i.e., cause no more than a slight abnormality that would have no more than a minimal effect on her ability to work)(Tr. 19-20), is fully supported by the medical and other evidence, and free of legal error. *See* 20 C.F.R. §§ 404.1521 and 416.921.

**C. Physical impairment**

Plaintiff contends the ALJ failed to properly reject the April 4, 2005, contradicted opinion of treating physician David Bare, M.D. and PAC Mr. Cantu, that plaintiff is limited to sedentary work. (Ct. Rec. 18 at 18-19, referring to Tr. 384-387.) Dr. Bare and Mr. Cantu acknowledge Dr. Hahn released plaintiff for sedentary work on January 18, 2005. (Tr. 385.)

In assessing this evidence, the ALJ correctly observes treating physician Dr. Hahn not only released plaintiff for sedentary work on January 18, 2005, she opined plaintiff would be capable of her past work as a server and other light to moderate work, in a month. (Tr. 47, referring to Tr. 272.) This is a specific, legitimate reason supported by substantial evidence to discredit the contradicted opinion of a different treating source that plaintiff is limited to sedentary work. It is also interesting that at the January 18, 2005, appointment, plaintiff

---

with medication, also indicating it is non-severe. (Tr. 604.) Plaintiff states repeatedly that adderall is effective. (See e.g., anxiety is treated well with adderall, 4/8/03 at Tr. 256); feels is doing well with adderall, 10/29/04 at Tr. 242; has a good response to adderall, 7/7/05 at Tr. 399; adderall is "very effective" 5/4/06 at Tr.460; focus and concentration are improved with adderall, 4/12/07 at Tr. 520; and focus and concentration decreased when she stopped adderall, 7/11/07 at Tr. 558.)

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                    - 21 -

told Dr. Hahn she wanted to play sports, swim and lift weights, indicating her own belief she was not limited to sedentary activities. (Tr. 272.)

    The ALJ's second reason for rejecting the RFC for sedentary work is that the record does not specifically indicate whether Dr. Bare examined plaintiff prior to giving the opinion. (Tr. 47.) The ALJ also notes Mr. Cantu opined on April 7, 2003, plaintiff had cervical spondylosis that limited her to sedentary work. (Tr. 22-23, referring to Tr. 382-383.) Mr. Cantu's first appointment with plaintiff was less than a month earlier, on February 13, 2003. (Tr. 21-23.)

    When determining plaintiff's RFC, the ALJ considered the opinion of A. Peter Weir, M.D., who examined plaintiff on May 15, 2007, at the ALJ's request. (Tr. 508-518.)  Dr. Weir's report indicates plaintiff reported her right shoulder is worse than before surgery [on January 11, 2006 at Tr. 495]; she has neck pain, stiffness and limited range of motion; tension headaches; numbness in both arms at times, and numbness in the long fingers of both hands.  Using her right arm is painful, especially reaching overhead. (Tr. 508.)

    According to Dr. Weir, plaintiff indicates her past psychological history consists of ADHD and bipolar disorder. She spends most of the day sleeping.  Plaintiff watches television, enjoys listening to music and playing the guitar, and does light housework. (Tr. 509.) The ALJ points out:

> Dr. Weir noted that [plaintiff] was neat, clean, well
> groomed, cheerful, pleasant, cooperative and in no
> distress. . . [she] had no difficulty removing or
> replacing her socks, arose easily from a chair, and
> had no difficulty getting on or off the exam table[.]

. . . [She had] normal reflexes, negative straight leg
raising tests, and normal 5/5 muscle strength
throughout . . . [she] was able to stand on one leg
at a time and perform a quadriceps squat; had decreased
sensation to light touch in the long fingers of both
hands, but otherwise no areas of decreased sensation
to light touch in the upper or lower extremities[.]

(Tr. 49, referring to Tr. 509-511.)

Dr. Weir diagnosed degenerative arthritis of the cervical spine and the right acromioclavicular joint. (Tr. 512.) The ALJ assessed an RFC for physical limitations based on Dr. Weir's, including in relevant part: the ability to lift up to 10 pounds continuously, 11-20 frequently, and 21-50 pounds occasionally; sit, stand, or walk 6 hours out of 8; sit without interruption for 2 hours, and stand or walk without interruption for 1 hour; occasionally lift overhead with the right hand, and climb ladders or crawl occasionally. (Tr. 53, referring to Tr. 512.)

The ALJ's reasons for rejecting the contradicted opinion of treatment providers Dr. Bare and Mr. Cantu are specific, legitimate and supported by substantial evidence. Examining physician Dr. Weir's opinion supports an RFC for greater than sedentary work, but, contrary to plaintiff's argument, the ALJ relied on more than simply this opinion when he rejected Dr. Bare and Mr. Cantu's RFC. The ALJ properly weighed and discussed the contradicted medical opinions. His reasons for rejecting some of the opinions are legitimate, specific and supported by substantial evidence.

**D. Agency opinions**

Plaintiff alleges the ALJ failed to properly reject the December 2, 2004, opinion of agency reviewing psychologist Edward Beaty, Ph.D. [affirmed by Joe Gardner, Ph.D., on April 4, 2005],

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                - 23 -

that plaintiff suffers from an affective disorder, antisocial personality disorder, paranoid personality disorder with passive-aggressive and self-defeating traits, and substance addiction disorder, resulting in several moderate work-related limitations. (Ct. Rec. 18 at 14, 18, referring to Tr. 361,364,368-369,371-377.) The Commissioner responds that the ALJ rejected the opinion because it is inconsistent with (1) other substantial evidence, including plaintiff's benign clinical mental signs during repeated psychological and physical examinations, and (2) with the record as whole, which documents no treatment by any psychiatrist, psychologist, or other mental health treatment professional since onset. (Ct. Rec. 19-3 at 12-13, referring to Tr. 53.)  The Commissioner is correct.  Additionally, the ALJ rejected without error the opinion Dr. Beaty reviewed, Dr. Wert's 2004 evaluation. (See Tr. 373.) The ALJ did not err in his treatment of the reviewing agency opinion.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence..

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 19)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 17)** is **DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel for Plaintiff and Defendant, enter judgment in favor of Defendant, and **CLOSE** this file.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                    - 24 -

DATED this 28th day of October, 2009.


                              s/ James P. Hutton

                         JAMES P. HUTTON
                    UNITED STATES MAGISTRATE JUDGE